Call the first case, please. Good morning, Your Honors, and may it please the court. I am Rachel Moran, and I represent the appellant, Tracy Williams. Mr. Williams raised four discrete grounds for relief in his brief. I intend to focus on issues two and three, but will of course be happy to answer questions if you have them. questions about the remaining issues. Your Honors, Tracy Williams was prejudiced by prosecutors that failed to disclose the most critical evidence against him, a trial court that allowed the discovery violation to go uncorrected, and a defense attorney who abandoned Williams' only viable defense. This court should reverse Williams' first degree murder conviction and remand for a new trial for two reasons. First, the state committed a discovery violation when it failed to disclose a purported conviction. Second, the state did not disclose a purported confession by Williams, and the trial court here compounded the error by declining to impose any sanctions. Was there any indication that the state was aware of this statement by, was it Reed? Yes, Your Honor. Was there any indication that the state was aware of that specific statement? Yes, Your Honor, two indications, and I'll go through them each. The first is that the state, if you look at the direct examination, which is in the record at pages AA267. Time out. Time out. Sure. I rephrase my question. Were they aware of it before it was made in open court? Yes, Your Honor. Okay. Go ahead. The first is that the way the direct examination comes out, it does appear to be intentionally elicited. The state specifically asks, did you have a conversation? What did he say during this conversation? And then the statement came out. So it was, it's not as if David Reed just went off on a narrative. It was intentionally elicited. But the second, even if this court thinks that perhaps the state expected David Reed to say something else about the conversation, the more important fact is that the state had ample opportunity to say it was not aware as soon as counsel alleged a discovery violation, and the state never said that. It said, oh, well, we've disclosed similar statements. That's good enough. But it never said we had no idea this was going to happen. And common sense indicates that would be the first thing a prosecutor would do if accused of a discovery violation. Say, hey, I never even knew that this was coming out. So, yes, Your Honor, that speaks to the fourth of the four-pronged test as to whether a discovery violation requires sanctions, whether the state has to determine that a discovery violation did occur. And that is reviewed under a de novo standard. The trial court here found no discovery violation. But Williams would certainly contend that one did occur. Illinois Supreme Court Rule 412.82 requires a disclosure of any statements made by the accused whether oral or in writing. Here, the statement is, as David Reed was a state witness, he testified at trial. He testified that after the incident occurred, shortly after Friend was killed, David Reed asked Williams, why did you do this? And Williams responded, he owed me $40. That statement, it is undisputed. That particular statement was not disclosed. Counsel, wasn't it in the police report that there was a drug debt of some kind? Yes, Your Honor. There is no question that the police report contains two indications. The first indication is that a considerable time before, there's not an exact time frame, but sometime before the incident occurred, Williams, David Reed, and Mark Friend, the eventual victim in this case, along with possibly David's brother, Paul, were in the bedroom together. And when Williams walked in, he said something to the effect of, hey, you owe me $40. And it's not an actual statement in the police report. It's just Reed says they talked about the debt. And that's the exact quote, talked about. No argument, nothing, just a discussion about the debt. Ms. Moran, excuse me for one moment. Can you tell me why this violation of 412A, sub 2, surprised the defendant or unduly prejudiced the defendant? Yes, Your Honor. Be specific. Yes. It surprised the defendant and defense counsel because they had no idea that there was a confession to this incident, an explicit confession. And that's what this was. This was a confession, why did you do it? I did it because he owed me $40. That's the only, although Justice Connors is correct that there is a discussion of the debt, the debt itself did not surprise defense counsel. An explicit confession that that is why he killed Friend was never disclosed and that came as a complete surprise when David Reed testified to this at trial. The reason it prejudiced, to answer the second part of your question, the reason it prejudiced Williams is that this was the strongest evidence against him. This was in fact, as to whether the appropriate verdict was first or second degree murder, this was in fact a very close case. And that is one of the prongs this Court looks to, is the closeness of the evidence. Here, there's no dispute that Williams killed the man, but as to whether it was done over the debt, intentionally because of the debt, or whether it was done in a Well, this debt was no surprise to anyone. Throughout the trial, it was known that there was some sort of allegation that $40 was owed on a drug deal. And that very well could have been the motivation. Your Honor, there is a very significant difference between knowing that the debt happened and knowing that he killed him because of the debt. And here, this is the only evidence that he killed, this is the only direct evidence in the entire case that he killed him because of the debt. Other than this statement, which was not disclosed, the only evidence that he killed him because of the debt was the heavily impeached and repeatedly contradicted testimony of Andre Smith, who is another witness that testified at trial that he did not believe Williams carried a bat into the house, but had a prior grand jury statement in which he said he observed Williams carrying something that looked like a bat into the house. That testimony was recanted by Andre Smith and discredited by David Reed himself, who is certainly not out to protect Williams, but testified that he was the one who opened the door for Williams when Williams returned and he didn't see a bat at all. Counsel, is your argument that's what makes it a close case for the first and second degree murder, this issue? The difference between first and second degree is what makes it a close case, not whether Williams should have been acquitted at all. Yes, Your Honor. Turning to the second prong, the strength of the undisclosed evidence, this was, as I just mentioned, the only statements that the State had. This provided an explicit confession to the murder. And the State in its brief contended that this was merely a statement that went to motive and that there was evidence of motive already in the trial. This was not just a statement relevant to motive. This was an explicit confession to first degree murder. But even if this was motive evidence, this Court has repeatedly stated that motive evidence does, in fact, meet the second prong, the strength of the undisclosed evidence, because motive evidence is incredibly important, although not an element, incredibly important. For example, the Supreme Court in Illinois, People v. Weaver, held that the motive evidence is, quote, extremely damaging. And in that case, admission of a defendant's statement that she had had an affair prior to allegedly killing her husband was sufficient to require a new trial. There are numerous cases on this point. Counsel, there's no evidence that this defendant came to this location knowing there was a drug debt and it was incensed about it. I mean, there's none of that kind of testimony. There's none at all, Your Honor. In fact, the only evidence we have is the police report, which says they talked about the debt. And David Reed, as the detective surveyed and testified, David Reed specifically said it wasn't even an argument, certainly not incensed. They simply talked about the debt. And then after that, we also have Williams' unimpeached testimony, where he says that he was aware of the debt, but that he told Friend, pay it off when you can. Don't worry about it. The reason he wouldn't sell Friend more drugs was because of the debt. But there's no evidence at all that there was any kind of a heated discussion. Not a single witness ever said there was. There is simply, if Your Honors look at this case, yes, it's clear that Williams committed this act, but it's not at all clear as to why it happened. And his testimony that he did it after Friend attacked him is unimpeached. No one else saw this incident. David Reed, Andre Smith, the other witnesses to testify, never said that it didn't happen the way Williams described. But none of them testified that there was a scuffle or they heard other than a couple of bangs from something, because there was no one in the room. I mean, there wasn't a big disturbance in the bedroom. That's correct, Your Honor. There's no real testimony about what happened. But David Reed was, neither of them were near the bedroom. Andre Smith testified that he couldn't even see around the hallway to the bedroom. And they were both heavily intoxicated. Andre Smith admitted to being intoxicated. And David Reed testified to an amount of alcohol that actually would have killed him if it had been true, 36 shots in one hour. So David Reed was, I think it's safe to say, extremely intoxicated when the incident happened. Turning to the third prong, however, the third prong is whether prior notice could have helped defense counsel discredit the evidence. Here, the two most relevant cases on point are People v. Hendricks and People v. Aguilar. And in both of those cases, this Court held that the third prong is met where defense counsel, quote, may have modified his trial strategy had he known of the evidence prior to trial. And here, that's exactly what we have here. Defense counsel stated at the motion for new trial that had he known of this evidence, he may well have chosen a different tactic altogether, not have had Mr. Williams testify, or at least would have reserved his opening statement until after David Reed testified to see how the evidence came out and how strong it was against him. But, Your Honors, even if he had not changed his strategy, at least, at a minimum, he could have done a better job impeaching David Reed. His attempt at impeachment was ineffectual. It was one question. It did not elicit anything helpful. Or at least he could have had more time to think about how to argue it away. And that was the case in People v. Matthews, which, again, this Court held that the third prong was met simply because prior notice would have at least given defense counsel a chance to figure out how to explain the statement. There should be no question that a discovery violation occurred because the State does not dispute that this particular statement was not disclosed. And because the statement prejudiced Williams and was the strongest evidence against him. Is there any evidence in the record showing that the State's action in not disclosing was willful? Yes, Your Honor. What? The fact that they knew of the evidence and did not disclose it indicates that it was willful. The State's contention, I believe, would be that the evidence, Your Honor, that they intentionally elicited by asking specific questions about the statement and that they never said they didn't when defense counsel claimed there was a violation. They never once said, hey, we didn't know of this. This came as a surprise to us, too. And this Court should infer from that that they did know of the statement. But, Your Honors, also to answer that point, even if this Court finds that the failure to disclose was not willful, this Court has often held the four prongs need not all be met. This is a balancing test. And this Court has often held, I would point this Court to Matthews and Hendricks in particular, that even where the fourth prong is not met, where the State's failure to disclose is not willful, a new trial can still be the appropriate remedy where the defendant was prejudiced by the discovery violation. Unduly prejudiced. Unduly prejudiced. Yes, Your Honor, if those prongs are met. Because you may very well have here a close situation. Your Honor, we would certainly say that this is a close situation as far as the strength of the evidence and the appropriate verdict here. Turning to the second point, however, Your Honors, defense counsel was ineffective here when he abandoned Williams' second degree request and never once argued it in closing argument. Here we have a situation, as this Court is well aware, it is up to the defendant whether to request a lesser included offense instruction or a second degree instruction in a murder case. Mr. Williams here requested it on both prongs of second degree murder, unreasonable belief in self-defense, and sufficient provocation, and the Court found evidence to satisfy, at least to give an instruction on both of these prongs. Counsel then argued only that the appropriate verdict here was self-defense, where in some situations that may be a strategic call. Counsel can do that. There's no evidence here one way or another as to whether that was a strategy or not. But even if it was, Your Honors, it was not reasonable. As Your Honors are well aware from reading the brief, the testimony here from Mr. Williams is that Mark Friend attacked him with the bat, he punched Williams in the face several times, then he hit Williams twice on the elbow and the shoulder with the bat. So there was a mutual combat here, which is one of the instances in which a provocation instruction is appropriate. In the medical testimony there was severe injury to his head? Not to Williams' head, to the victim's head. Yes, there is, Your Honor. And that's exactly the problem. What we have here is Williams grabbed the bat and then admitted at trial, Friend was defenseless and unarmed. He was coming after Williams. He wasn't lying on the bed, as the prosecutor contended. He was coming after Williams, but it was only with his hands, and Williams hit him three times with the bat. That's not self-defense. And it was unreasonable in this case for the defense attorney to inform the jury that the only issue here was whether Williams was justified. That wasn't the issue. This is a situation where he needed to cut his losses and recognize that the appropriate verdict here was second degree and argue it that way. The jury never heard about second-degree murder until the state's attorney got up and said, essentially, I'm not sure why counsel never argued this, but you're going to get some instructions to discount them. They don't apply here. He's trying to help out. Exactly, Your Honor. That's all the jury ever heard about that. This was a close case, and defense counsel dropped the ball when he unreasonably chose not to argue for a second-degree instruction. Thank you, Your Honors. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Carol Gaines, and I represent the people of the state of Illinois. With respect to the discovery issue raised here today, it is the people's position that there is no evidence from this record, in this case, that a violation of Supreme Court Rule 412 occurred. First and foremost, this record is replete with instances and evidence that the victim owed defendant a $40 drug debt. It is an uncontested fact that this case, in every way, shape, and form was about the drug debt that was owed from the victim to the defendant. It was fronted in defense counsel's opening statement. The defendant himself testified that there was a drug debt, that he asked Mark for the money. Mark didn't have the money. The defendant, when he said, David Reed's house, and David Reed testified, and he was subject to cross-examination, and his credibility was a question for the jury. So this wasn't a surprise to him. No, not at all, Your Honor. In fact, David Reed testified that the defendant came to his house. He said, your boy owes me money. David Reed says, I don't know anything about that. It's kind of not my issue. He goes into the bedroom where the victim is sitting on the bed. He says, you owe me money. And Mark says he doesn't have the money. Reed says, again, Reed says, that's not pertaining to me. When Mark says he doesn't have his money, the defendant comes back out into the living room. He says to David Reed, your boy owes me money. I'll be back. The defendant leaves his home. He comes back in five minutes with a baseball bat up his sleeve. Now, Andre Smith testified at trial. He was questioned. Sometimes he said, yes, I saw it. No, I saw it. Yes, I described it. No, I didn't describe it. But his grand jury testimony was admitted as substantive evidence, and in that grand jury testimony, he testified that he saw the defendant come back with a bat, that the bat was sticking out of his sleeve six inches. He was asked by a grand juror, was it a wood bat or an aluminum bat? He said, it's a wooden bat. He saw him come into the house with a bat. He went back into a bedroom, the defendant, back into the bedroom where David was before, I'm sorry, where Mark was sitting on the bed in David Reed's bedroom, and David Reed goes to get some ice. He hears two quick pops. He comes back in the room. He sees the defendant holding the bat over his head in an afterswing position, and Mark Friend is laying on the bed where he had just been sitting with his head split wide open, bleeding over everything, blood splatter on the wall, on the sheets, on the mattress, on the slats, under the bed, everywhere. But that was a grand jury testimony, not a trial. No, his grand jury testimony was admitted at trial as substantive evidence. The jury was entitled to consider that as if it came out of Mr. Smith's mouth. The tender police reports in this case included all the discussions about the drug debt between the defendant and Mark Friend, between the defendant and David Reed. Was there anywhere in the police reports that it said that he said, the specific questions that were asked when he was on the stand testifying in direct examination? Well, what happened next? What did he say? Blah, blah, blah, blah. Right. Was that in any of the police reports? What the police reports do indicate that he said after it was just David and the defendant there, David Reed and the defendant at the home, Mark's dead body is in the bedroom, and David Reed says to him, why'd you do that? You know, this ain't called for. In the police reports it's indicated that the defendant responded, don't touch anything, don't worry, I'm not going to leave you holding the trick bag. I'm not going to leave you to clean anything up. I'm not going to leave you holding the bag kind of thing. Now, it's important, if you look at the cross-examination of David Reed, and this goes, Your Honor, to the question you asked originally, is whether the state willfully elicited, whether they even really, really knew about it. Because what happens is you have David Reed on the stand, and the prosecutor asks him, because the GPRs indicate that, in fact, he answered the question by saying, well, I'm not going to leave you holding the bag, I'm not going to leave you holding the bag. The prosecutor asks Reed the question, thinking that that's the answer she's going to get. And then he says, no, he said he owed me $40. Now, if you look at the cross-examination of David Reed, the defense attorney did an excellent job of cross-examining, because in that cross-examination, Reed backed off that statement and said, well, he didn't necessarily say it in response to my question, you know, why'd you do it? But he did say, hey, your boy owed me $40. So it's a little unclear, and arguably from the record, that that statement wasn't even made, and therefore, how can the state be required to tender something that may not have even been made? And the defense attorney wasn't surprised. He cross-examined and got that answer, so it's questionable as to whether the statement was even made. And he put Detective Savada on the stand, who testified, hey, I talked to David after the crime, and David never said that the defendant made that statement after he said, what happened, tell me what happened, along those lines. So that's questionable. The fact that the prosecutor didn't immediately say to the trial judge, well, I'm surprised, I'm surprised, I'm surprised, doesn't mean that she didn't know that statement wasn't made. She just may not have wanted to, you know, put that on the record. I'm not sure why she didn't say that. The record indicates that she didn't feel, she did feel the statement similar to that. I mean, a statement of intention made by this defendant, you know, your boy owes me $40, I'll be right back, and he comes back with a bat, and then he splits the guy's head wide open with the bat. And to that point, I would also argue that David Reed testified, it's his house, it's his bedroom, he doesn't keep a bat in his house. He didn't have a bat under his bed. That goes to the defendant's credibility when the defendant testifies, hey, Mark Friend came up with a bat, he came up, and that's when the mutual combat, I don't know where that's coming from because that was never an issue really raised in terms of mutual combat in this appeal before now. But there was evidence that if you look at this entire record and the cross-examination of David Reed and the defendant's directive, Detective Savada, that that statement arguably was never made. I don't think from this record you can discern that the state willfully elicited that statement. If you look at the colloquy between the prosecutor and David Reed when she's questioning him, she gets that and she asks him, because in the GPRS indicates that it's okay for her to ask him, what did the defendant say, because she thinks he's going to say, well, you told me it was okay, you know, don't worry, I won't leave you holding the bag. Once he answers, you owe me $40, she doesn't focus on it, she doesn't ask any more questions about it, she doesn't do anything but move him forward, you know, asking him the next question, I think was something along the lines of, well, you weren't too happy with what your friend had done, and then did he say anything else? Yes, he said, don't worry, David, I won't leave you holding the bag. So I don't think that from this record you can discern that this prosecutor willfully elicited that statement. I also think that what was disclosed to the defendant in terms of the reports and what was tendered to him, that the sum and the substance of the defendant's statement regarding that the victim owed him money and the debt was recorded tender, it was known to the defense to the extent that any additional statement was allegedly made, it was cumulative. The state was not extracting any kind of confession from the defendant for this questioning. The record does not bear that out. I would also like to point out that this Court's review is not de novo. This Court reviews the defendant's determination of whether or not a discovery violation occurred for an abuse of discretion. Likewise, with a trial judge in this case, even if you find that the state has somehow elevated in its responsibility to tender something they might not have known, the inquiry does not end there. The trial judge in this case considered all four of those factors argued here this morning that are necessary to the determination of whether a new trial should be granted in this sort of instance. That ruling is subject to an abuse of discretion standard of review. The people would assert that the evidence in this case was not closely balanced. The trial judge analyzed that factor. He considered it, even taking the defendant's version of events into consideration, even if he took them as true. The evidence was still sufficient to find him guilty of first-degree murder. The strength of the evidence undisclosed, again, this case was all about the drug deal from start to finish. His defendant's intent was already stated when he told Mark Reed about the debt and that the defendant owed him money and that he would be back, returning with a bet. The third factor, the likelihood that prior notice would have helped the defendant to spread the evidence. Again, the defendant stated all he could do. He discredited Reed on cross-examination, and he called Detective Spada to testify. The Reed never even told him. The defendant said he killed Mark because of the debt. And again, the last factor, the willfulness of the state. People have already argued that there was no willfulness on the part of the prosecution with respect to this statement. As there was no use of discretion, we would ask this Court to affirm that ruling. With respect to the ineffective instances of counsel claim and closing argument, there is no case which says because an instruction is tendered and given on a second-degree murder that the defense attorney must conform his closing argument to that instruction. Here, the instructions were tendered because the defendant wanted them. And just because the defendant wanted them doesn't mean that the defense attorney then has to structure his argument based on those instructions. Here in this closing argument, the defense attorney basically chose to argue the facts rather than the law. And he chose to argue that the state failed to meet its burden of establishing that the defendant was not justified in using the force that he used. He argued the state failed to show that the defendant brought the burden to the house. He argued that the victim initiated the fight, which led to the defendant's retaliation based on his belief that he feared for his life. It was a strategic decision which the people contend is unassailable as an ineffective instance of counsel claim under Strickland. He chose to argue in the manner he felt would best lead the jury to conclude that the defendant was justified and the actions in the state failed to prove that otherwise. As to the prejudice problem, there is no reasonable likelihood that the outcome would have been different had he argued on second degree. Second degree murder instructions shifts the burden to the defense. It might be something he didn't want to go into. If he could get the jury to believe that the state hadn't met their burden, then that would have resulted in the defendant being justified. Counsel, let me ask you. I think you mentioned it, but is there any case law to suggest that because a lawyer  Not to my knowledge, Your Honor. Not to my knowledge. I don't think there's a case that requires a defense attorney to absolutely have to argue an instruction that's given at the defendant's request. A little strange, though, isn't it? I don't think so, Your Honor. He wins the battle in getting the instruction given, and he didn't say anything about it. But I don't think, you know, I think. He must have forgot. Again, no, I don't think he forgot. I don't think that it was, you know, again, it was a strategic decision that he made given the facts of this case, and the facts of this case, and what's required once you get past, I mean, the state proving the first three elements, then what's required to get through to the secondary murder instructions in terms of the burdens. And that may have been something he didn't want to go to the jury with. I would point out it's interesting that in the defendant filed a pro se motion for a new trial alleging ineffective assistance of counsel, and there was no mention of his counsel's closing argument in that motion. So we believe under Strickland the defendant has failed to show that his defense attorney's closing argument was either unreasonable or prejudicial. We ask you to affirm the defendant's conviction for first degree murder. Thank you, Ms. Gaines. Thank you. Ms. Moran, any rebuttal? Very briefly, Your Honor, I have three brief points. The first two are relating to the discovery violation. To address the standard of review, the state claims that it's abuse of discretion. This is actually addressed in the opening brief at pages 34 to 35. But it's a bifurcated standard. The question of whether a discovery violation occurred is reviewed de novo. If the trial court's decision as to whether to impose sanctions is reviewed for abuse of discretion, but that's not even relevant here because the court found no discovery violation. Turning to the state's claim that the sum and substance of the confession was disclosed in the police report, the most relevant case refuting that point is People v. Allen, in which there was a similar situation where two defendant's statements were at issue. One was disclosed to the defendant in Allen. It was disclosed that he was aware that a murder victim was being set up. That was not even contested. Everybody knew that. However, there was an explicit confession that he was involved in the setup. That was not disclosed. And the state made the exact same argument in Allen, and this court held that one does not satisfy the other. A statement just because everyone knew about a possible motive and a possible setup doesn't mean that the state disclosed an explicit confession of being involved. And to address Your Honor's question, Justice Conner's question, about whether there are any cases specifically requiring an attorney to argue second-degree murder. No, Your Honor, there aren't. And the reason for that is because that is typically a strategic decision, depending on the facts of the case. Here the state harps on this was a strategic decision. This was counsel's decision. Well, it may have been. We don't know. He could have forgotten, Your Honor. But even if it was a strategic decision, it was absolutely unreasonable. And this court is well aware strategic decisions still need to be reasonable. This one was ludicrous if it was strategic. Well, why was it unreasonable? As counsel suggested to us, possibly he didn't want to take on the burden of showing self-defense or whatever. Your Honor, a trial attorney representing a person accused of first-degree murder needs to be able to judge what the evidence is. And in this case, the evidence from his own client who he put on the stand was that he hit an unarmed person with a baseball bat three times and killed him. This was not a self-defense case. It was unreasonable to look at those facts and say, hey, I'm going to ignore the only possible defense and just argue to the jury that the question here, the central issue in this case, as defense counsel stated, is whether my client was justified. That's absurd. He wasn't justified. But he may have believed he was justified, and he may have been provoked. Well, the jury didn't accept it, obviously. And can we say the counsel was ineffective or acted improperly just because the jury didn't go with the argument? Your Honor, this Court can look at the two-pronged test in Strickland, find that it was unreasonable, and as far as prejudice goes, find that this was a close case. We don't need proof that the jury would have accepted it. But it is relevant, Your Honors, that the only crime Williams was accused of that he totally denied was concealment of a homicide, and the jury did acquit on that point. So there is evidence in the record that the jury believed Williams over David Reed in at least some portions of the testimony. The problem here is that Williams' testimony was that he committed second-degree murder, in essence, not that he was justified. Counsel, can I ask you the effect of that? Let's say we agree with your argument on this issue. And the ruling is that because he didn't comment on it or argue the instruction that that was improper actions by this attorney. What's the effect of that ruling? Would we have to hold it specifically to the facts of this case, or would people be citing that case to say any lawyer in any case who doesn't argue an instruction that was given is not providing appropriate representation? Your Honor, I think frankly the appropriate decision would be to say that given the facts of this case, this Court makes a factual inquiry, and it was unreasonable in this case to abandon the lesser-included offense instruction here and to refuse to argue. Thank you, Your Honors. Thank you. Thank you. The case will be taken under advisement.